**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| TOLCO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>Defendants. | No. 1:26-cv-05047 |

**COMPLAINT**

1. Plaintiff, Tolco Corporation ("Plaintiff") is an importer, as defined in 19 C.F.R 101.1, of merchandise into the U.S. subject to the challenged duties. Plaintiff paid duties assessed and collected by U.S. Customs and Border Protection ("CBP"), including duties imposed pursuant to executive orders invoking the International Emergency Economic Powers Act ("IEEPA"), which the United States Supreme Court subsequently held to be unlawful and which Defendants subsequently terminated.

2. Beginning in February of 2025, the President invoked IEEPA as purported authority to issue a series of executive orders imposing new and substantial tariffs on good imported from nearly every foreign country, including countries from which Plaintiff sources its imports and transports imports on behalf of its customers.

3. Plaintiff paid IEEPA tariffs assessed on its imported merchandise.

4. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

5. The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. *Id.* at 5. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers.

6. Accordingly, given the unlawfulness of the IEEPA tariffs, as determined in *Learning Resources*, Plaintiff seeks a full refund from Defendants of all IEEPA tariffs Plaintiff has paid to the United States.

**PARTIES**

7. Plaintiff Tolco Corporation is a U.S. corporation located in Ohio and incorporated in Ohio.

8. Defendant United States Customs and Border Protection is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

9. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

10. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

11. Defendants are referred to collectively in this Complaint as "CBP."

## JURISDICTION

12. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources*, slip op. at 5, n.1.

13. Exhaustion of administrative remedies—i.e., filing a protest with CBP and challenging its denial—is not required for Plaintiff's challenge to the lawfulness of the IEEPA tariffs because "Customs is powerless to perform any active role in the determination of" the legality "of the assessment[s]" levied under IEEPA. *Thomson Consumer Elcs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001); *see AGS Co. Automative Sol'ns v. U.S. Customs & Border Protection*, 2025 WL 3634261, at *3 (Ct. Int'l Trade Dec. 15, 2025).

14. This Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief. 28 U.S.C. §§ 2643(a)(1), (c)(1).

15. Plaintiff has standing to bring this lawsuit because it is the importer of record of goods imported into the United States from countries subject to the IEEPA duties as implemented and collected by CBP that have been held by the Supreme Court to be unlawful. As a result of the executive orders identified in this lawsuit, Plaintiff paid IEEPA duties to the United States and thus suffered a concrete financial injury because of those orders. The relief Plaintiff seeks from this Court would redress those injuries.

## BACKGROUND

### I. The IEEPA Tariff Orders.

16. Beginning on or about February 1, 2025, the President declared national emergencies relating to drug trafficking from other countries and issued executive orders imposing additional duties on imports from Canada, Mexico, and China (the "Fentanyl Trafficking Tariffs").

Each of these orders cited IEEPA as the purported authority for the imposition of tariffs. The Fentanyl Trafficking Tariff orders include, as amended, among others:

17. **Executive Order 14193, as amended**: imposed an additional 25 percent ad valorem duty on imports from Canada in February 2025, later increased to 35 percent in August 2025. *Exec. Order No. 14193, Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 9,113 (Feb. 7, 2025), as amended by *Exec. Order No. 14231, Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 11,785 (Mar. 11, 2025), and *Exec. Order No. 14325, Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 37,957 (Aug. 6, 2025).

18. **Executive Order 14194, as amended:** imposed an additional 25 percent ad valorem duty on imports from Mexico. *Exec. Order No. 14194, Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).

19. **Executive Order 14195, as amended:** imposed an additional 10 percent ad valorem duty on imports from China, later increased to 20 percent in March 2025 and reduced to 10 percent in November 2025. *Exec. Order No. 14195, Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 7, 2025), as amended by *Exec. Order No. 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 11,463 (Mar. 7, 2025), and *Exec. Order No. 14357, Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 50,725 (Nov. 7, 2025).

20. On April 2, 2025, the President declared a national emergency relating to trade deficits and imposed worldwide tariffs on nearly all U.S. trading partners through Executive Order 14257 (the "Worldwide Reciprocal Tariffs"). That order established a 10 percent universal

baseline tariff with higher, country-specific rates. Citing IEEPA as the purported authority for the imposition of tariffs, the Worldwide Reciprocal Tariff orders include among others:

21. **Executive Order 14257:** imposed worldwide tariffs, including a 10 percent universal baseline rate and additional country-specific rates. *Exec. Order No. 14257, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits,* 90 Fed. Reg. 15,041 (Apr. 7, 2025).

22. **Executive Order 14259 and 14266:** increased the tariff rate applicable to imports from China to 125 percent. *Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China,* 90 Fed. Reg. 15,509 (Apr. 14, 2025); *Exec. Order No. 14266, Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment,* 90 Fed. Reg. 15,625 (Apr. 15, 2025).

23. **Executive Order 14298, 14334, and 14358**: reduced the tariff rate applicable to imports from China to 10 percent. *Exec. Order No. 14298, Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China,* 90 Fed. Reg. 21,831 (May 21, 2025); *Exec. Order No. 14,334, Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China,* 90 Fed. Reg. 39,305 (Aug. 14, 2025); *Exec. Order No. 14,358, Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China,* 90 Fed. Reg. 50,729 (Nov. 7, 2025).

24. Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States ("HTUS"), requiring that goods subject to the challenged tariffs be entered under new tariff codes.

25. By this Complaint, Plaintiff seeks relief as a result of all duties it paid or will pay to the United States arising from the IEEPA executive orders ("Challenged Tariff Orders").

**II. CBP's Implementation of the IEEPA Tariffs.**

26. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

27. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

28. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.")

29. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

30. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

**III. Liquidation.**

31. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

32. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

33. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

34. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

35. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, CBP liquidates entries 314 days after the date of entry of the goods (automatic liquidation cycle) and will post a notice on its website. 19 C.F.R. § 159.9.

36. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

37. Once liquidation has occurred, and *if* the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the

duties. *See* 19 U.S.C. § 1514.[1] But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

38. In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) ("*AGS*"), a three-judge panel of this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties. *Id.* In a related action, the government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

## GROUNDS FOR RELIEF

### I. The Supreme Court Held That the IEEPA Duties Are Not Authorized.

39. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Trump*, *et al.*, No. 25-cv-00066 (Dkt. 2). This Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. It was the Federal Circuit's decision that was, in turn, affirmed by the Supreme Court on February 20, 2026.

40. In the months following the *V.O.S. Selections* complaint, the President, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others.

41. CBP continued to collect duties imposed by the Challenged Tariff Orders while the *V.O.S. Selections* litigation and related litigation remained pending, and only just announced on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be

[1] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026).[2]

42. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

43. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

44. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

45. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument on November 5, 2025.

---

[2] Available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2.

46. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.[3]

47. On the same day, the President issued an executive order providing that the "additional ad valorem duties imposed pursuant to IEEPA" under specified prior executive orders "shall no longer be in effect" and "shall no longer be collected," thereby formally terminating all tariffs imposed by the Government under IEEPA, including the Fentanyl Trafficking Tariffs and the Worldwide Reciprocal Tariffs. *Exec. Order No. 14,389, Ending Certain Tariff Actions,* 91 Fed. Reg. 9437 (Feb. 20, 2026).

## II. Plaintiff Paid IEEPA Duties.

48. As of the date of this Complaint, Plaintiff acted as importer of record and paid IEEPA duties imposed by the Challenged Tariff Orders.

49. The goods Plaintiff imports into the United States that are subject to IEEPA tariffs entered the United States under HTSUS provisions, including the Chapter 99 special provisions implementing the IEEPA tariffs.

50. Plaintiff paid IEEPA duties on numerous entries.

51. As of the filing of this Complaint, at least some of Plaintiff's entries subject to IEEPA tariffs have liquidated.

52. Plaintiff seeks relief of all IEEPA tariffs it has paid to the United States under the unlawful IEEPA tariff orders that have not yet been refunded, including refunds with interest as provided by law.

---

[3] This Complaint cites to the "*Learning Resources*" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

**<u>COUNT I</u>**
**THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES***

53. Plaintiff incorporates paragraphs 1-52 above by reference.

54. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this court's ruling and the Federal Circuit's affirmance of this court's opinion in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

55. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id.* at 21.

56. The Challenged Tariff Orders purport to impose duties and modify the HTSUS solely under IEEPA and cannot be retroactively justified by reference to any other source of authority.

57. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

58. This Court is bound by the *Learning Resources* decision and as a result of that decision should order refunds of all IEEPA duties paid by Plaintiff, with interest as provided by law.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

(i) order CBP to reliquidate any entries that have been liquidated with IEEPA duties;

(ii) order CBP to liquidate all unliquidated entries subject to IEEPA duties without IEEPA duties;

(iii) order the United States to refund to Plaintiff the duties collected from Plaintiff on all entries subject to IEEPA duties, regardless of liquidation status, with interest as provided by law;

(iv) award Plaintiff their reasonable costs, including attorneys' fees, incurred in bringing this action; and

(v) grant such further relief as this Court deems proper.

Dated: November 6, 2026

Respectfully submitted,

*<u>/s/ Eric Larson Zalud</u>*

Eric Larson Zalud
Nora K. Cook
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
127 Public Square Suite 4900
Cleveland, OH 44114-1304
Telephone: 216.363.4178
ezalud@beneschlaw.com
ncook@beneschlaw.com